# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**WILLIAM ASH, III,**

    **Plaintiff,**                                                  **CASE NO. 8:15-cv-2679-T-27JSS**

vs.

**NATIONAL CREDIT ADJUSTERS, LLC**

    **Defendant.**
_____/

## UNOPPOSED MOTION TO SET ASIDE THE FINAL JUDGMENT

COMES NOW, the Defendant, National Credit Adjusters, LLC, ("NCA" and/or "Defendant") and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 60(b)(1), and hereby files this, Defendant's Unopposed Motion to Vacate Clerk's Default, and states the following in support thereof:

### I. Background / Procedural History.

Plaintiff filed a complaint in this Court against Defendant on November 16, 2015 allegations violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. [DE 1]. On November 24, 2015, Plaintiff served Defendant with a summons and complaint in the instant action. Through inadvertence due to mishandling of the file and a calendaring error, NCA failed to timely appear and/or file a responsive pleading. *See,* Declaration of Nicholas D. Moore.

Thereafter, Plaintiff moved for entry of a clerk's default pursuant to Federal Rule of Civil Procedure 55(a) and on December 29, 2015, a clerk's default was entered against NCA. [DE 6 & 8]. NCA has no record of receipt of Plaintiff's Motion for Clerk's Default. As such, NCA took no action relative Plaintiff's Motion for Clerk's Default or Plaintiff's later filed Motion for Default Judgment. *Ibid.* On January 4, 2016, Plaintiff moved for a Default Judgment against NCA. [DE 9].

On January 5, 2016, this Court granted Plaintiff's motion for Judgment. [DE 10]. On January 6, 2016, the Court entered a Default Final Judgment against NCA in the amount of $4,060.00. (DE 11)

Thereafter, on or around January 6, 2016, Plaintiff's counsel contacted the law firm of Golden Scaz Gagain, PLLC in an attempt to resolve the default judgment; as such law firm typically handles all of NCA's litigation in Florida. *See,* Declaration of Nicholas D. Moore. Plaintiff's counsel contacted Attorney Dale T. Golden of Golden, Scaz, Gagain, PLLC and inquired whether the firm currently represents NCA in any matter. *Ibid.* It is NCA understanding that Mr. Golden informed Plaintiff's counsel that his firm did represent NCA. During the communications, Plaintiff's counsel indicated that Plaintiff had obtained a default judgment against NCA in the Middle District of Florida, in the instant case, and inquired whether NCA would be amenable to discussing resolution of the claim before Plaintiff began the process of enforcing the judgment. *Ibid.*

A few days later, on or around January 11, 2016, NCA received Plaintiff's Motion for Default Judgment, the Court's Entry of Default, and a letter from Plaintiff's counsel regarding such matters. *Ibid.* Thereafter, NCA engaged the law firm of Golden Scaz Gagain, PLLC to attempt to resolve the issue concerning the entry of a final default and the default judgment amount. *Ibid.* NCA has entered into a settlement with the Plaintiff relative to the default judgment amount. The parties agreed to settle this matter for a confidential sum, and as part of the settlement, Plaintiff has agreed not to oppose NCA's Motion to Set Aside the Final Default Judgment, and once such is set aside, file a notice of voluntary dismissal with prejudice of the instant action. *Ibid.* NCA avers that it has/had a meritorious defense to the instant matter. *Ibid.*

## II. Legal Standard.

As a fundamental matter, "[c]ourts construe Rule 60(b)(1) liberally to ensure that they resolve doubtful cases on the merits." *J & M Assocs., Inc.,* 2011 U.S. Dist. LEXIS 131752, at *25, 2011 WL 5553696. Indeed, the Eleventh Circuit has made it clear that "there is a strong policy of determining cases on their merits and [it] therefore view[s] defaults with disfavor." *Coello v. La Cabana Mexican Rest.,* No. 4:12–CV–1104–VEH, 2013 U.S. Dist. LEXIS 525, at *6, 2013 WL314357 (S.D.Ala. Jan.2, 2013) (quoting *In re Worldwide Web Sys., Inc. .,* 328 F.3d 1291, 1295 (11th Cir.2003)). *Davila v. Alcami Group, Inc.*, 12-23168-CIV-MORENO, 2013 WL 1934168, at *3 (S.D. Fla. May 9, 2013). Accordingly, "[t]he entry of judgment by default 'is a drastic remedy and should be resorted to only in extreme situations. It is only appropriate where there has been a clear record of delay or contumacious conduct.' " *Id.* (quoting *E.F. Hutton & Co. v. Moffatt,* 460 F.2d 284, 285 (5th Cir.1972)).

Rule 60(b) has vested the district courts with the power "to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States,* 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949). Motions under the rule are directed to the sound discretion of the district court. *Griffin v. Swim-Tech Corp.,* 722 F.2d 677, 680 (11th Cir. 1984). Rule 60(b) lists six grounds upon which relief from a final judgment can be granted. Rule 60(b)(1) states that relief is available based upon "mistake, inadvertence, surprise, or excusable neglect." Defendant bears the burden of the motion. *PNC Bank, Nat. Ass'n v. Lucmaur, LLC,* No. 6:14–cv–248–Orl37KRS, 2015 WL 1020604, at *1 (M.D.Fla. Mar. 9, 2015). To qualify for relief under Rule 60(b)(1), the movant must establish: "(1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *In re*

*Worldwide Web Sys., Inc.,* 328 F.3d 1291, 1295 (11th Cir.2003) (quoting *Fla. Physician's Ins. Co. v. Ehlers,* 8 F.3d 780, 783 (11th Cir.1993)). "The determination of what constitutes excusable neglect is generally an equitable one, taking into account the totality of the circumstances surrounding the party's omission." *Sloss Indus. Corp. v. Eurisol,* 488 F.3d 922, 934 (11th Cir.2007). In determining whether excusable neglect exists, courts utilize a four-factor balancing test: (1) "the danger of prejudice to the [opposing party]," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). *See, De Gazelle Group, Inc. v. Tamaz Trading Estab.*, 308 F.R.D. 688, 694 (M.D. Fla. 2015).

### III. Legal Argument.

#### a. NCA has a Meritorious Defense:

##### i. The June 18, 2015 letter was not an Attempt to Collect a Debt.

"In order to prevail on an FDCPA claim, a plaintiff must plead and prove three elements." *Elmore v. N.E. Florida Credit Bureau, Inc.*, 3:10-CV-573-J-37JBT, 2011 WL 4480419, *2 (M.D. Fla. 2011). "First, **the plaintiff must have been the object of a collection activity** arising from consumer debt." *Id.* (emphasis added). This initial element of a claim brought under the FDCPA is universally recognized. *See, e.g., McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008)("In order to prevail on an FDCPA claim, Plaintiff must prove that… she was the object of collection activity…"); *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000)("In order to prevail on an FDCPA claim, a plaintiff must prove that… the plaintiff has been the object of collection activity…"); *Fuller v. Becker &*

*Poliakoff, P.A.*, 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002)(same); *Erickson v. Gen. Elec. Co.*, 854 F. Supp. 2d 1178, 1182 (M.D. Fla. 2012)(same).

Courts addressing the issue have universally recognized that not every communication between a debt collector and debt falls under the purview of the FDCPA. That is, the FDCPA does not apply to communications between a debt collector and a debtor when such communications are not attempting to collect a debt. *See, Parker v. Midland Credit Mgt., Inc.*, 874 F. Supp. 2d 1353, 1356 (M.D. Fla. 2012), reconsideration denied (July 31, 2012); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1167 (3d Cir. 1987); *Bailey v. Security National Servicing Corp.,* 154 F.3d 384 (7th Cir.1998); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 371 (D. Conn. 2012).

In *Parker*, this Court explained that "the FDCPA does not apply to every communication between a debt collector and a debtor." *Id.*, 874 F.Supp.2d 1353, 1357 (M.D. Fla. 2012)(Moody, J.). Instead, there are several "relevant factors" to be considered when determining whether or not a communication is made "in connection with debt collection." *Id.* at 1356. Such factors include the intent of the communication, whether payment is demanded, whether the communication is merely informational and whether the communication provides terms of payment or payment deadlines. *Id.* at 1356 – 1358.

The letter at issue in the instant case does not constitute an attempt to collect a debt as a matter of law. Specifically, the letter does not demand payment, provide terms of payment or contain any payment deadlines. As the letter at issue does not constitute debt collection activity as a matter of law, it is NCA's position that Plaintiff could not have satisfied the initial element of his claim and thus has a meritorious defense.

### ii. The inclusion of FDCPA disclosure language does not transform the letter into an attempt to collect a debt.

There is no dispute that the June 18, 2015, letter includes certain language that §§ 1692e and 1692g require debt collectors to include in certain collection letters. However, the mere inclusion of FDCPA disclosure language in a letter does not transform a non-collection letter into a collection letter for FDCPA purposes. Instead, as Judge Moody noted in *Parker*, it is the substance of the letter that drives the determination of whether the letter constitutes debt collection activity subject to the FDCPA.

In the instant case, the Plaintiff asks this Court to conclude that the mere inclusion of FDCPA language in letter, turned a letter that by it explicit terms was not an attempt to collect a debt into an attempt to collect a debt. This same theory has consistently been rejected by federal courts. *See, e.g., Maynard v. Cannon*, 401 Fed. Appx. 389, 395 (10th Cir. 2010)("the inclusion of the FDCPA notice is legally irrelevant"); *Goodson v. Bank of Am., N.A.*, 1:12-00065, 2014 WL 940492, at *6 (M.D. Tenn. Mar. 10, 2014)(same); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir. 2010)("The letter bore a disclaimer identifying it as an attempt to collect a debt, but this does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance."); *Phillips v. NCO Fin. Sys., Inc.*, 12-CV-15482, 2014 WL 1405217, at *7 (E.D. Mich. Apr. 11, 2014)("The letter did contain the boilerplate statement at the bottom of the page that the letter was 'a communication from a debt collector,' but this did not transform the letter into an attempt to collect a debt under the FDCPA.); *Donnelly-Tovar v. Select Portfolio Servicing, Inc.*, 945 F. Supp. 2d 1037, 1045 (D. Neb. 2013)("A disclaimer identifying a communication as an attempt to collect a debt will not automatically trigger the protections of the FDCPA"); *Garrett v. BNC Mortg., Inc.*, 929 F. Supp. 2d 1120, 1127 (D. Colo. 2013)("However, the fact that an entity identifies itself as a debt

collector, or tells a consumer that it is attempting to collect a debt, is not sufficient on its own to bring that entity within the purview of the FDCPA.")

For example, in *Lewis v ACB Business Services Inc.*, 133 F. 3d 389 (6th Cir. 1998) the debtor brought suit against Defendant for, *inter alia*, sending correspondence that offered the debtor an opportunity to choose a payment plan *after* the Plaintiff had demanded that all collection activity cease. As in the instant case, the letter in *Lewis* included language at the bottom stating it was "an attempt to collect a debt." The Sixth Circuit rejected the plaintiff's argument that the inclusion of the § 1692e(11) language turned the letter into debt collection activity holding:

> We note that the mere fact that the letter states at the bottom that it "is an attempt to collect a debt" does not transform the letter into an unlawful demand for payment. On the contrary, such a statement is required by the FDCPA. Given the fervor with which Lewis seeks to protect his rights under the FDCPA, he certainly would have called foul had this communication not included this necessary language. […] To punish ACB for compliance with this provision just because the remedy letter states that it is an "attempt[ ] to collect on a debt" would be an absurd result that we decline to reach.

*Lewis*, 135 F.3d at 399-400 (internal citations omitted).

The instant matter is analogous to *Lewis*. The June 18, 2015 letter contains FDCPA language that, if viewed in a vacuum, could create the impression that NCA was attempting to collect a debt. However, the inclusion of FDCPA does not compel the "absurd result" Plaintiff suggests. *See, Gburek*, 614 F. 2d at 386; *Maynard*, 401 Fed. Appx. at 395 (10th Cir. 2010).

Similarly in *Thompson v BAC Home Loans Servicing, L.P.,* the plaintiff brought an FDCPA class action against the defendant, asserting that the defendant failed to provide the notice required by 15 U.S.C. § 1692g subsequent to sending plaintiff a letter which advised that defendant had acquired plaintiff's home mortgage. *Id.*, 2:09-CV-311-TS, 2010 WL 1286747, at

*1 (N.D. Ind. Mar. 26, 2010). The defendant moved to dismiss, arguing that its notice of the mortgage transfer was not an attempt to collect a debt. *Id.* at *3 – 4. In dismissing the plaintiff's FDCPA claim, the Court held that the letter at issue was not an attempt to collect a debt notwithstanding the inclusion the disclaimer required by 15 U.S.C. §1692e(11). Specifically, the Court reasoned:

> However, language that is required by the FDCPA to be in any initial communication with a consumer was located on the bottom of the first page: "this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose." (Pl.'s Compl., Ex. A, Notice at 1); *see* 15 U.S.C. § 1692e(11). The Court finds that including this language on the second page did not alter the nature of the communication or the information provided in the letter. *Cf. Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 399 (6th Cir.1998) ("We note that the mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment."). Although ensuring payment of the debt cannot be denied as the Defendant's ultimate goal, the Notice itself did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form.

*Id.*, at *5.

In the instant case, as in *Thompson*, the letter at issue was informational in nature. Like in *Thompson*, Defendant's letter "did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form." *Id.* at *5. Moreover, as has been widely recognized by both the federal district and circuit Courts, the mandated FDCPA notices contained in Defendant's letter do not turn the letter into an attempt to collect a debt as a matter of law.

None of the factors paramount to a determination of whether a correspondence constitutes an attempt to collect a debt are present in the letter at issue. Moreover, the required FDCPA disclosures contained in the letter are legally irrelevant, and cannot transform Defendant's letter into an attempt to collect a debt. As such, Defendant's letter does not

constitute an attempt to collect a debt as a matter of law. Because Plaintiff cannot satisfy the initial element of her claim against Defendant, Defendant has thus shown it has/had a meritorious defense.

b. **The length of the delay will have little to no potential impact on judicial proceedings**

As stated above, NCA and Plaintiff have agreed to settle this case in its entirety relative to the judgment that was entered against it. As part of the settlement, Plaintiff has agreed not to contest NCA's Motion to Vacate the Final Default. *See* Declaration of Nicholas D. Moore. Once, the final default judgment is vacated against NCA, Plaintiff has agreed to file a dismissal prejudice of the instant matter. *Ibid.* As such, the length of delay of the actions of NCA in causing a default final judgment to be entered against it will be minimal to this Court.

c. **NCA's reason for the delay was due to a calendaring error and non-receipt of a few key pieces of mail**

Through inadvertence due to mishandling of the file and a calendaring error, NCA failed to timely appear and/or file a responsive pleading. *Ibid.* NCA has no record of receipt of Plaintiff's Motion for Clerk's Default. *Ibid.* As such, NCA took no action relative Plaintiff's Motion for Clerk's Default or Plaintiff's later filed Motion for Default Judgment. *Ibid.* Therefore, as shown through the declaration of Nicholas D. Moore, the reasons for the delay and cause of the default judgment to be entered against NCA was

d. **NCA acted in good faith**

NCA acted at all times in good faith in the handling of this matter. Once the Clerk's Default and Final Judgment was brought to its attention it took swift action to resolve the matter with Plaintiff/Plaintiff's counsel. *Ibid.* NCA's mistake in handing the initial service of the Complaint and improper calendaring of the responsive deadline was just that, a mistake, and not

bad faith actions in which NCA intentional ignored the instant lawsuit. *Ibid.* Once NCA was made aware of the Default Judgment entered against it, it took swift action to address the case and situation.

IV. **Conclusion.**

Given the strong presumption in the Eleventh Circuit in favor of resolving cases on their merits, the absence of any delay or willful neglect by Defendant, the absence of any prejudice to Plaintiff, and the presence of a meritorious defense, the Court should vacate the Final Judgment entered against NCA.

WHEREFORE, Defendant respectfully requests an Order from this Honorable Court GRANTING Defendant's Motion to Set Aside/Vacate the Final Default.

Respectfully Submitted,

/s/ Charles J. McHale
Charles J. McHale, Esq.
FBN: 0026555
**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609-2303
Phone: (813) 251-5500
Direct: (813) 251-3661
Fax: (813) 251-3675
cmchale@gsgfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    /s/ Charles J. McHale
    Charles J. McHale, Esq.
    FBN: 0026555